## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TAMMY SUE YARBROUGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:12-cv-2041-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Tammy Sue Yarbrough ("Yarbrough") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court will affirm the decision denying benefits.

### I.  Procedural History

Yarbrough filed an application for Disability Insurance Benefits on February 24, 2009, alleging a disability onset date of January 15, 2009, due to Sjogren's syndrome, fibromyalgia, rheumatoid arthritis, seizures, anxiety, panic disorder, and

migraines.  (R. 12, 158).  After the SSA denied Yarbrough's claim, she requested a hearing before an ALJ.  (R. 136-37).  The ALJ subsequently denied Yarbrough's claim, (R. 9-24), which became the final decision of the Commissioner when the Appeals Council refused to grant review.  (R. 1-4).  Yarbrough then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the

objectively determined medical condition is of such a severity that it
can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective
> medical evidence of a condition that could reasonably be expected to
> cause the pain alleged, *neither requires objective proof of the pain
> itself*.  Thus under both the regulations and the first (objectively
> identifiable condition) and third (reasonably expected to cause pain
> alleged) parts of the *Hand* standard *a claimant who can show that his
> condition could reasonably be expected to give rise to the pain he
> alleges has established a claim of disability and is not required to
> produce additional, objective proof of the pain itself*.  *See* 20 CFR §§
> 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th
> Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is itself

sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223.  Therefore, if

a claimant testifies to disabling pain and satisfies the three part pain standard, the

ALJ must find a disability unless the ALJ properly discredits the claimant's

testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the

ALJ must articulate reasons for that decision:

---

[1]  This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*,
761 F.2d 1545, 1548 (11th Cir. 1985).

> It is established in this circuit that if the [ALJ] fails to articulate
> reasons for refusing to credit a claimant's subjective pain testimony,
> then the [ALJ], as a matter of law, has accepted that testimony as true.
> Implicit in this rule is the requirement that such articulation of reasons
> by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id.*

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Yarbrough met the insured status requirements of the Act through September 30, 2013.  (R. 14).  Moving to the first step, the ALJ found that Yarbrough had not engaged in substantial gainful activity since January 15, 2009, and, therefore, met Step One.  *Id.*  Next, the ALJ found that Yarbrough satisfied Step Two because she suffered from the severe impairments of "undifferentiated connective tissue disease, Sjogren's syndrome, pseudo-seizures, fibromyalgia, migraines, depression, and anxiety."  *Id.*  The ALJ then proceeded to the next step and found that Yarbrough failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 17).  Although the ALJ answered Step Three in the negative,

consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to

Step Four where he determined that Yarbrough

> has the residual functional capacity to perform a range of light work
> as defined in 20 CFR 404.1567(b).  Specifically, I find that she can
> frequently balance, stoop, kneel, crouch, crawl and climb ramps or
> stairs.  However, she can never climb ladders, ropes or scaffolds.  I
> further find that she should avoid all exposure to hazards, including
> unprotected heights, dangerous machinery, the operation of motor
> vehicles, and large bodies of water.  Additionally, I find that she is
> limited to the performance of simple, routine and repetitive tasks at
> level 3 reasoning for 2 hour periods in an 8-hour day.  Finally, I find
> that she can interact occasionally with the public, and interact
> appropriately with supervisors and coworkers in a stable, routine
> setting.

(R. 19).  As of the date of the ALJ's decision, Yarbrough was 45 years old, (R. 22),

and had past relevant work that included sedentary skilled work as a customer

service representative, medium unskilled work as a dry cleaner counter worker, and

sedentary skilled work as a sales marketing coordinator.  (R. 22, 118-19).  In light

of Yarbrough's RFC, the ALJ held that Yarbrough "is unable to perform any past

relevant work."  (R. 22).  Lastly, in Step Five, the ALJ considered Yarbrough's age,

education, work experience, and RFC and determined she "can perform other work

eixisting in significant numbers in the national economy."  *Id.*  Therefore, the ALJ

found that Yarbrough "has not been under a disability, as defined in the Social

Security Act, from January 15, 2009, through the date of this decision."  *Id.*

**V.  Analysis**

Yarbrough raises only one issue on appeal, i.e., that the ALJ erred in refusing to credit her testimony of disabling symptoms caused by seizures, migraine headaches, fibromyalgia, Sjogren's syndrome, depression, and anxiety.  *See* docs. 8, 10.  Because the ALJ found Yarbrough's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," (R. 20), she met the requirements of the pain standard set out above.  However, the ALJ found Yarbrough's allegations were not fully credible. (R. 17).  It is this determination that Yarbrough challenges.  In light of her appeal, this court must review the ALJ's finding to determine if it is supported by substantial evidence.  For the reasons stated fully below, the court finds that the ALJ explained fully and provided the necessary support as to why he found Yarbrough was not credible for each of the five conditions she challenges.

1.  <u>Seizures</u>

Yarbrough testified that she has, on average, two seizures per month, during which she is unresponsive and incontinent, and that the seizures cause her to lie down and sleep for three to four hours, and leave her confused for an additional two to three hours.  (R. 77-78).  The ALJ found the medical records show that Yarbrough's allegations of debilitating seizures are "greatly overstated" and contradicted by the medical record.  (R. 20).  Specifically, the ALJ found

8

Yarbrough's testimony was contradicted by treatment notes in October 2009 "document[ing] that her seizures were occurring once per month, on average,"  (R. 20, 402), and that Yarbrough's seizure calendar, in which she indicated five seizures between October 2009 and December 2009, was "directly contradicted" by treatment notes in January 2010 documenting that over three months had passed since she had a seizure.  (R. 20, 412).  Based on the court's review of the record, it is clear that the ALJ properly relied on inconsistencies and conflicts between Yarbrough's testimony and the medical records to find her not credible.  *See* 20 C.F.R. § 404.1529(c)(4) ("We will consider . . . the extent to which there are any conflicts between your statements and the rest of the evidence . . . .").  Consequently, the ALJ's decision not to credit Yarbrough's allegations of disabling seizures is supported by substantial evidence.

2.  Migraines

Likewise, the ALJ found the medical records contradicted Yarbrough's testimony that she suffered frequent migraine headaches lasting for three days at a time.  (R. 20, 83).  For example, the ALJ observed that an April 2009 treatment note from Dr. Theodros Mengesha, Yarbrough's treating neurologist, stated that her migraines improved significantly after she began taking Treximet.  (R. 20, 404).  The ALJ concluded that "[o]verall, the record reflects that the intensity and frequency of her headaches have improved with medications."  (R. 20).  In fact, the

9

treatment records show that in April 2010, Dr. Mengesha noted that Yarbrough was having "one bad headache per week, at which time she takes Treximet and *aborts the headache almost immediately*." (R. 483) (emphasis added). The regulations provide that the effectiveness of medication is a factor to be considered in assessing subjective symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv). Therefore, the ALJ properly considered the effectiveness of medications in assessing the severity of Yarbrough's headaches, and substantial evidence supports his finding that they did not cause disabling symptoms.

      3. <u>Fibromyalgia</u>

      Yarbrough testified that her fibromyalgia and undifferentiated connective tissue disorder caused fatigue, and soreness in every muscle, which she rated as a nine on a ten-point scale. (R. 85-86). However, the ALJ once again found the medical records contradicted Yarbrough's allegations, and cited treatment notes showing Yarbrough had full range of motion of her joints in February 2009, reported no jaw, neck, arm or back pain in March 2009, and had 5/5 muscle strength and full range of motion of all joints in January 2010. (R. 21, 278, 363, 413). The ALJ further found that in January 2010 treatment notes showed Yarbrough "felt better with exercise and [that] gabapentin was helping her muscular pains." Finally, the ALJ found that Yarbrough's testimony at the hearing that she does not walk or exercise was "directly contradicted" by a treatment note in

July 2010, which documented that Yarbrough "had started doing yoga and was still exercising and walking." (R. 21, 469). The court finds these well articulated credibility findings are supported by substantial evidence.

4. Depression and Anxiety

The ALJ found also that the treating records belied Yarbrough's testimony of disabling depression and anxiety. (R. 21, 94-95). The ALJ observed that the "record contains numerous documentations that [Yarbrough] had normal mood . . . and normal affect." (R. 21). As an example, the ALJ cited a March 2009 treatment note showing no symptoms of depression or anxiety. (R. 21, 363). Finally, the ALJ cited treatment notes from Huntsville Psychiatry documenting that Yarbrough "was 'doing very well' with no mood changes" in January 2010, and that she was "doing o.k." in October 2010. (R. 21, 471, 475). These treatment notes show Yarbrough's depression and anxiety were well controlled with treatment. Consequently, substantial evidence supports the ALJ's finding that Yarbrough's depression and anxiety did not cause disabling symptoms.

5. Sjogren's Syndrome

Finally, the ALJ rejected Yarbrough's testimony that Sjogren's syndrome caused her eyes to become dry, resulting in an inability to focus after reading or working at the computer for more than one hour. (R. 21, 90). In rejecting this testimony, the ALJ cited a treatment note from July 2010 showing Yarbrough had

no eye redness or changes in vision.  (R. 21, 469).  That treatment note also states that "[d]ry eyes and dry mouth continue to be a problem, no worse, *but she tolerates this*."  (R. 469) (emphasis added).  Earlier treatment notes from the same provider also indicate that Yarbrough was tolerating her eye dryness in June 2009 and January 2010.  (R. 414, 411).  The court finds these treatment notes, coupled with the absence of treatment notes documenting serious vision problems caused by dry eyes, provide substantial evidence to support the ALJ's credibility finding.

Ultimately, based on this record, Yarbrough has failed to show that the ALJ erred in failing to credit her testimony regarding her disabling pain.  In fact, contrary to Yarbrough's contention, the ALJ articulated specific reasons for discounting Yarbrough's  testimony of disabling symptoms – all of which are supported by substantial evidence.  Moreover, even though the ALJ did not credit Yarbrough's testimony of disabling symptoms, he recognized that Yarbrough had some limitations caused by her impairments.  (R. 21).  The ALJ explained that he accounted for Yarbrough's pain and fatigue by limiting her to light work; for her seizures by requiring that she avoid all exposure to hazards and never climb ladders, ropes, or scaffolds; and for her depression by limiting her to simple routine and repetitive tasks, with only occasional interaction with the public.  (R. 21-22).  The court finds that substantial evidence supports the ALJ's determination that these restrictions account for Yarbrough's symptoms.  Accordingly, because this

court does not reweigh the evidence, there is no reversible error in the ALJ's credibility finding.

### VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Yarbrough is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

DONE this 30th day of May, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE